## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| TANJA D. HOLLIS d/b/a TANJA TAX | ) | |
| PREPARATIONS, LLC and, d/b/a | ) | |
| TANJA TAX PREPARATIONS, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

## COMPLAINT FOR PERMANENT INJUNCTION

The United States complains and alleges as follows:

1.     The United States brings this action to enjoin Tanja D. Hollis ("Defendant") and any entity through which Tanja D. Hollis conducts business, including Tanja Tax Preparations, LLC ("TTP, LLC") and Tanja Tax Preparations sole proprietorship, and all persons and entities in active concert or participation with her from directly or indirectly:

   a.     Preparing, assisting in the preparation of, or directing the preparation of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or anyone other than herself, or other than for an entity for which she has a legal obligation to file a tax return;

1

b.  Filing, assisting in the filing of, or directing the filing of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than herself;

c.  Owning, operating, managing, profiting from, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, franchising, or volunteering at a business that prepares or assists in the preparation of tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents;

d.  Using, maintaining, renewing, obtaining, transferring, selling, or assigning any Preparer Tax Identification Numbers ("PTIN") or Electronic Filing Identification Numbers ("EFIN");

e.  Transferring, selling, or assigning her customer list(s) and/or customer information;

f.  Training, instructing, teaching, creating, or providing guides, memoranda, directions, instructions, or manuals pertaining to the preparation of federal tax returns;

g.   Engaging in any activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6700, or 6701; and

h.   Engaging in conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws and from promoting any false tax scheme.

2.   The United States also seeks an order, under 26 U.S.C. § 7402(a), requiring Tanja D. Hollis to disgorge to the United States the unlawful profits she obtained for the preparation of federal tax returns that make grossly incompetent, negligent, reckless, and/or fraudulent claims.

## JURISDICTION AND VENUE

3.   This action is authorized and requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States and is commenced at the direction of the Attorney General of the United States in accordance with 26 U.S.C. §§ 7402, 7407, and 7408.

4.   This Court has jurisdiction pursuant to 26 U.S.C. § 7402(a) and 28 U.S.C. §§ 1340 and 1345.

5.   Venue is proper in this Court, pursuant to 26 U.S.C. §§ 7407(a), 7408(a), and 28 U.S.C. § 1391, because Tanja Tax Preparations, LLC's principal place of business is located in Spalding County, Georgia and Tanja D. Hollis resides in and prepares tax returns in Spalding County, Georgia

which is within this judicial district. All or a substantial part of the events giving rise to this Complaint occurred within this judicial district.

## DEFENDANT

6.      Tanja D. Hollis has prepared tax returns since at least 2014. Ms. Hollis obtained an EFIN to electronically file returns for customers, which has been active since 2014. She also obtained a PTIN from the Internal Revenue Service ("IRS") that she uses to identify herself on returns she prepares for customers. She resides in Griffin, Spaulding County, Georgia.

7.      Tanja Tax Preparations, LLC is located at 5121 W. Solomon Street, Griffin, Georgia 30223, and is Ms. Hollis's business. Ms. Hollis began operating Tanja Tax Preparations as a sole proprietorship in 2014 and obtained an employer identification number ("EIN"). On August 19, 2020, Ms. Hollis restructured the Tanja Tax Preparations sole proprietorship as a Georgia limited liability company and obtained another EIN for the newly organized Tanja Tax Preparations, LLC. Since then, Ms. Hollis has served as the sole Member of TTP, LLC. Ms. Hollis is the only person who prepares tax returns at TTP, LLC. According to state records, TTP, LLC is an active limited liability company in good standing.

## DEFENDANT'S ACTIVITIES

8.      Ms. Hollis prepares and files hundreds of returns each filing season. Ms. Hollis is a "tax return preparer" as defined by 26 U.S.C. § 7701(a)(36).

9.      For the 2019 to 2024 processing years, Ms. Hollis prepared and filed 5,055 returns. During this period the number and percentage of returns that claimed refunds and Earned Income Tax Credits ("EITC") were as follows:

| Returns Prepared by Tanja D. Hollis | | | |
|---|---|---|---|
| Processing Year* | No. of Returns | Refunds Claimed | EITCs Claimed |
| 2024** | 831 | 815 (98%) | 680 (82%) |
| 2023** | 880 | 868 (98%) | 744 (88%) |
| 2022*** | 939 | 931 (99%) | 827 (87%) |
| 2021 | 901 | 884 (98%) | 734 (81%) |
| 2020 | 786 | 777 (99%) | 658 (84%) |
| 2019 | 718 | 706 (98%) | 567 (78%) |
| **Total:** | **5,055** | **4,981 (98%)** | **4,210 (83%)** |

* The "processing year" is the year in which the IRS Service Center receives a tax return.
** As of August 20, 2024
*** As of October 18, 2022.

10.      For the 2019 to 2022 processing years, Ms. Hollis filed 2,447 returns using the EIN for Tanja Tax Preparations sole proprietorship. For

the 2022 processing year, Ms. Hollis filed 908 returns using the EIN for TTP, LLC.

11.    Ms. Hollis listed her PTIN on all of the filed returns described above in paragraph 9.

12.    Ms. Hollis typically charged between $175 and $500 per return, purportedly based on the complexity of the returns. These fees are, in some cases, deducted from the refund claimed so that the customer only receives the refund net of Ms. Hollis's fees. In other cases, customers paid cash directly to Ms. Hollis or TTP, LLC.

13.    As part of its investigation into Ms. Hollis's tax preparation practices, the IRS interviewed 47 customers that Ms. Hollis prepared tax returns for during the 2023 and 2024 processing years.

14.    The IRS determined that the returns for 43 out of the 47 individuals it examined should be adjusted because they contained false and fraudulent claims, such as credits for fictitious education expenses. Ms. Hollis also reported profits for businesses that did not exist, created expenses for businesses that did not exist, or inflated expenses for businesses that did exist, to maximize losses on the Schedule C. This tactic maximized the Earned Income Tax Credit claimed on returns.

15.    The IRS was aided in identifying Ms. Hollis's fraudulent practices by her customers, several of whom said that Ms. Hollis knew facts

that would render the returns they filed to be false. Many also explained that they did not know about the businesses or expenses claimed on their returns or that they did not provide Ms. Hollis with the amounts of expenses claimed on their returns.

## DEFENDANT'S FRAUDULENT PRACTICES

16.     As a result of its investigation, the IRS found that the Ms. Hollis has repeatedly and continually prepared tax returns that understated liabilities and overstated refunds.

17.     The following examples of Ms. Hollis's practices refer to some of those customer accounts. To protect the identities of those individuals, the Complaint refers to each customer by a number based on the order in which they are referenced. The United States will serve on the Defendant, but not file, a key matching the numbers used below to the names of the customers.

### *False or Inflated Schedule C Business Losses*

18.     Individual taxpayers who are self-employed report their business's income and expenses on a Schedule C, Profit or Loss from Business (Sole Proprietorship), that are filed as part of the taxpayers' income tax returns. The net figure reported on a Schedule C, whether a profit or a loss, is a component of the taxpayer's adjusted gross income ("AGI").

19.     Some tax return preparers understate their customers' AGIs by fabricating or inflating losses claimed on a Schedule C filed with the returns.

Often, such tax return preparers will include a Schedule C on returns for customers they know do not own or operate a business. This fraudulently reduces the amount of taxable income the customers report and thus the amount of tax they report they owe. The reduction in tax also leads to bogus tax credit claims (like the EITC) and fraudulent refund claims.

20.    Ms. Hollis regularly prepares Schedules C for fictitious business or fabricates expenses on Schedules C to generate losses that reduce her customers' tax liabilities and result in inflated refunds. Representative examples of this scheme include:

| Customer | Tax Year | Schedule C Profit or Loss Fraudulently Reported |
|---|---|---|
| Customer 1 | 2023 | -$43,100 |
| Customer 2 | 2023 | -$43,700 |
| Customer 3 | 2022 | -$26,900 |
| | 2023 | -$26,400 |
| Customer 4 | 2023 | $4,800 |
| Customer 5 | 2022 | -$31,100 |
| | 2023 | -$15,538 |
| Customer 6 | 2022 | -$14,100 |
| | 2023 | -$18,630 |
| Customer 7 | 2023 | -$32,100 |
| Customer 8 | 2022 | -$11,200 |
| | 2023 | -$22,900 |

a.    Ms. Hollis prepared Customer 1's 2023 return. Customer 1 operated a barbershop out of his home as a side business, which incurred minimal expenses. Ms. Hollis prepared a Schedule C for

Customer 1 on which she reported exaggerated and fictitious business expenses totaling $44,600. These bogus expenses allowed her to claim a Schedule C business loss of $43,100 on Customer 1's 2023 tax return. Ms. Hollis used this loss to fraudulently claim the EITC for Customer 1 in the amount of $6,380 when he should have claimed none for the 2023 tax year.

      b.     Ms. Hollis prepared Customer 2's 2023 return. Ms. Hollis reported $43,700 in fraudulent Schedule C losses for the 2023 tax year related to a fictitious automotive and electrical repair business. The Schedule C loss reduced Customer 2's adjusted gross income from $75,750 to $32,050. By reporting fraudulent Schedule C losses on Customer 2's return, Ms. Hollis understated Customer 2's income and improperly claimed the EITC in the amount of $3,363 on Customer 2's return to which Customer 2 was not entitled.

      c.     Ms. Hollis prepared Customer 3's 2022 and 2023 returns. Customer 3 filed as Head of Household with three dependents. Ms. Hollis reported fraudulent Schedule C losses for a business listed only as "unclassified" in the amount of $26,900 for the 2022 tax year and in the amount of $26,400 for the 2023 tax year. The Schedule C losses reduced Customer 3's adjusted gross income from $49,927 to $23,027 for the 2022 tax year and from $48,164 to $21,764 for the 2023 tax

year. Ms. Hollis used the fraudulent Schedule C losses to reduce Customer 3's income and claim an inflated EITC in the amount of $6,325 and $7384 for the 2022 and 2023 tax years respectively.

d.    Ms. Hollis prepared Customer 4's 2023 return. Customer 4 filed as Head of Household with three dependent children. Ms. Hollis reported fraudulent Schedule C profits related to a fictitious "janitorial services" business in the amount of $4,800 for the 2023 tax year. The Schedule C profits increased Customer 4's adjusted gross income from $14,235 to $18,695 for the 2023 tax year. By claiming bogus profit on Customer 4's Schedule C, Ms. Hollis increased Customer 4's income to fraudulently maximize Customer 4's EITC.

e.    Ms. Hollis prepared Customer 5's 2022 and 2023 returns. she reported losses related to businesses listed as "unclassified" and as a "taxi and limousine service" for the 2022 and 2023 tax years respectively. For the 2022 tax year, Ms. Hollis reported on Customer 5's Schedule C fictitious business expenses including $7,400 (rent or lease vehicles, machinery, and equipment), $9,800 (repairs and maintenance), $9,100 (supplies), and $6,300 (taxes and licenses). Ms. Hollis claimed a Schedule C business loss of $31,100 on Customer 5's 2022 tax return. For the 2023 tax year, Ms. Hollis reported on Customer 5's Schedule C fictitious business expenses including $4,600

(repairs and maintenance), $6,000 (supplies), and $9,000 (travel). Ms. Hollis claimed a Schedule C business loss of $15,583 on Customer 5's 2023 tax return. Customer 5 told an IRS Revenue Agent that she worked for Door Dash during the 2023 tax year, and she did not operate a taxi business. Customer 5 stated she did not tell Ms. Hollis that she incurred any expenses, and she was not aware that Ms. Hollis claimed these losses on her behalf. When Customer 5 spoke with Ms. Hollis about the business expenses reported on her 2022 return, Ms. Hollis stated that she "does things a little different to get people more money back."

      f.    Ms. Hollis prepared Customer 6's 2022 and 2023 returns. She claimed fictitious losses of $14,100 and $18,630 for the 2022 and 2023 tax years, respectively, on Schedule Cs included with the returns. These loses were attributed to a "carpet and upholstery cleaning services" business. Customer 6 told an IRS Revenue Agent that he previously had a business cleaning offices but stated that he did not operate the business during the 2022 and 2023 tax years. Customer 6 stated that he did not tell Ms. Hollis that he had a business, and she did not ask him if he had any side jobs when preparing his returns for the 2022 and 2023 tax years. Nevertheless, Ms. Hollis claimed these fictitious losses to improperly reduce Customer 6's tax liabilities.

11

g.    Ms. Hollis prepared Customer 7's 2023 return. She claimed losses of $32,100 for the 2023 tax year on a Schedule C included with the return. This loss was attributed to a "utility system construction" business. Customer 7 stated that he did not operate a business during the 2023 tax year. Customer 7 told an IRS Revenue Agent that he did not discuss or provide anything to Ms. Hollis to suggest a Schedule C was required, let alone required to report such a significant loss. Ms. Hollis claimed the fictitious loss on Customer 7's tax return to reduce Customer 7's taxable liabilities.

h.    Ms. Hollis prepared Customer 8's 2022 and 2023 returns. she reported losses related to a bakery business for the 2022 and 2023 tax years respectively. For the 2022 tax year, Ms. Hollis reported on Customer 8's Schedule C fictitious business expenses including $4,000 (rent or lease vehicles, machinery, and equipment) and $7,200 (travel). Ms. Hollis used the Schedule C business loss to reduce the business's profits by $11,200 on Customer 8's 2022 tax return. For the 2023 tax year, Ms. Hollis reported on Customer 8's Schedule C fictitious business expenses including $20,400 (rent or lease other business property) and $2,500 (travel). Ms. Hollis used the Schedule C business loss to reduce the business's reported profits by $22,900 on Customer 8's 2023 tax return. Ms. Hollis claimed these fictitious

expenses to reduce her taxable income without Customer 8's knowledge.

***Inflated EITCs and Failure to Perform Due Diligence***

21.    As alleged above, Ms. Hollis used bogus Schedule C losses or profit she reported on her customers' returns to support inflated EITC claims.

22.    The EITC is a refundable tax credit available to taxpayers who earn income below certain levels. The amount of the credit is based on the taxpayer's income, claimed number of dependents, and filing status. Because the EITC is a refundable credit, in certain circumstances it can entitle a taxpayer to a refund greater than the amount of tax paid or a payment from the U.S. Treasury even if the value of the credit exceeds the taxpayer's reported tax liability.

23.    Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents. For certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income. Some tax preparers who manipulate reported income to maximize the EITC refer to the range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range." Similarly, claiming losses to offset higher income to decrease the total reported income and to fall within the "sweet spot" allows taxpayers to claim a larger refundable credit.

24.     By claiming fictitious losses to offset her customers' actual income or reporting fictitious business income to inflate her customers' income, Ms. Hollis made it appear as though her customers were entitled to the EITC when they were not. Similarly, these schemes allowed Ms. Hollis to claim greater EITCs for customers who would otherwise receive a smaller credit.

25.     As alleged in paragraphs 20(a) through 20(d) above, Ms. Hollis prepared fabricated Schedule C profits and losses to manipulate customers' income into the sweet spot and increase their EITC.

26.     Because of concerns regarding fraud in claiming the EITC, Congress has required that tax preparers comply with certain due diligence requirements prescribed by regulations issued by the Department of Treasury when the EITC is claimed on a return. Treasury Regulation § 1.6695-2(b) requires that preparers claiming the EITC: (i) complete and submit Form 8867; (ii) complete all necessary worksheets showing how the credit was computed; (iii) make reasonable inquiries regarding the information necessary to claim the credit and not ignore implications that the information provided is incorrect; and (iv) retain records of the information, documents, forms, and worksheets used to compute the credit. If tax preparers fail to exercise adequate due diligence when claiming the EITC, they may be subject to penalties.

27. The customers interviewed by the IRS stated that they did not give Hollis any reason to believe that the bogus Schedule C business profits or losses reported on their returns were legitimate.

28. Ms. Hollis did not respond to the investigating IRS Revenue Agent's attempts to contact her, and she did not provide any records of the information, documents, forms, and worksheets she used to compute the EITC she claimed on her customers' tax returns.

29. Ms. Hollis has been assessed due diligence penalties in the past. Ms. Hollis was assessed due diligence preparer penalties under 26 U.S.C. § 6695 on two separate occasions. On August 22, 2016, she was assessed penalties totaling $39,500 for tax year 2014. On March 19, 2018, she was assessed penalties totaling $23,970 for tax year 2016. The penalties did not deter Ms. Hollis's fraudulent conduct.

### *Fraudulent American Opportunity Tax Credits*

30. Education credits are refundable or non-refundable credits for certain types of education expenses incurred by taxpayers or their qualified dependents. Tanja D. Hollis fraudulently reported the American Opportunity Tax Credit on customers' returns to increase their refunds.

31. The American Opportunity Tax Credit ("AOTC")—formerly the Hope Scholarship Credit—is a credit for qualified education expenses of

eligible students for the first four years of higher education. The AOTC
reduces the amount of tax reported by the taxpayer on a dollar-for-dollar
basis up to $2,500. Up to $1,000 of that is refundable to the taxpayer if the
amount of the credit exceeds the tax shown due. The educational institution
provides the taxpayer and the IRS with a Form 1098-T, Tuition Statement,
that reports the qualified expenses.

32.     Ms. Hollis claimed false education credits on Forms 8863,
Education Credits (American Opportunity and Lifetime Learning Credits),
("Education Credits") that she attached to returns she prepared for customers
who did not incur qualified education expenses.

33.     Representative examples of this scheme include:

| Customer | Credit Claimed | Tax Year | Amount of Credit Fraudulently Claimed |
|---|---|---|---|
| Customer 9 | American Opportunity | 2023 | $1,000 |
| Customer 10 | American Opportunity | 2022 | $1,000 |
| | American Opportunity | 2023 | $1,000 |
| Customer 11 | American Opportunity | 2023 | $1,000 |

34.     Customers 9, 10, and 11 did not incur qualified education
expenses. Nevertheless, Ms. Hollis falsely claimed Education Credits on their
tax returns to reduce their tax liabilities.

## HARM TO THE UNITED STATES

35.    Ms. Hollis's pattern of preparing returns that understate customers' taxes and/or overstate their refunds or credits, through the schemes described above, has resulted in the loss of federal tax revenue.

36.    In many instances, Ms. Hollis's fraudulent overstatements of her customers' refunds and credits caused the United States to issue refunds that the customers were not entitled to receive.

37.    Based on the returns that it has examined, the United States has likely lost millions of dollars in tax revenue each year from Ms. Hollis's consistent understatement of liabilities and overstatement of refunds. Solely for the 43 fraudulent returns for the 2023 and 2024 processing years discussed in paragraphs 13 and 14, the refunds paid as a result of the fraudulently understated tax liabilities totaled $208,711.

38.    The United States has had to bear the substantial cost of examining the returns Ms. Hollis has prepared and collecting the understated liabilities from her customers.

39.    Apart from the direct harm caused by preparing tax returns that fraudulently understate customers' tax liabilities and overstate their refunds, Ms. Hollis's activities encourage customers' noncompliance with the internal revenue laws. Her fraudulent preparation practices create illegally inflated refunds under the pretenses of legitimate return preparation practices, and

thereby encourage their customers to continue using her services. Ms. Hollis's practices also harm customers who pay substantial fees for what they believe to be honest return preparation services, but eventually learn that they owe money to the IRS because of the inaccuracies reported on their returns.

40.    Because of Ms. Hollis's fraudulent schemes, some customers' returns inaccurately claim the EITC. These falsified claims undermine public confidence in a statutory credit meant to encourage low-income workers with young children to maintain employment. Similarly, Ms. Hollis's abuse of the AOTC undermines public confidence in statutory credits meant to encourage students' pursuit of higher education.

41.    Ms. Hollis's fraudulent conduct also harms honest tax return preparers because, by preparing tax returns that unlawfully claim bogus business losses that falsely inflate customers' refunds, she gains a competitive advantage over tax return preparers who prepare returns in accordance with the law. Customers who are satisfied with the tax refunds they receive but are unaware of Ms. Hollis's illegal return practices often return to her for subsequent tax seasons.

## COUNT I: INJUNCTION UNDER 26 U.S.C. § 7407 FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. §§ 6694 and 6695

42.    The United States incorporates by reference the allegations contained in paragraphs 1 through 41.

43.    Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a person who is a tax return preparer from engaging in certain conduct or from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, inter alia, the following:

a.    Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a tax return preparer who prepares a return that contains an understatement of tax liability or an overstatement of a refund or credit due to an unreasonable position that the preparer knew or should have known was unreasonable;

b.    Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which penalizes a tax return preparer who prepares a return that contains an understatement of tax liability or an overstatement of a refund or credit due to willful or reckless conduct;

c.    Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a tax return preparer who does not exercise due diligence in determining eligibility for Earned Income Tax Credits and for American Opportunity Tax Credits; and

d.    Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

44.    For a court to issue such an injunction, the court must find that:

19

a. The tax return preparer engaged in the prohibited conduct; and

b. Injunctive relief is appropriate to prevent the reoccurrence of such conduct.

45. If a tax return preparer's conduct is continual or repeated and the court finds that a narrower injunction would not be sufficient to prevent the preparer's interference with the proper administration of the internal revenue laws, the court may permanently enjoin the person from acting as a tax return preparer. *See* 26 U.S.C. § 7407(b).

46. Ms. Hollis has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing returns that understate her customers' tax liabilities and overstate their refunds and credits. As described above, Ms. Hollis prepared returns for customers that claim deductions for expenses that were not incurred by the customers and credits to which the customers were not entitled. Ms. Hollis has done so with the knowledge that the positions she took on returns were unreasonable and lacked substantial authority. Ms. Hollis thus engaged in conduct subject to penalty under 26 U.S.C. § 6694(a).

47. Additionally, Ms. Hollis has engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) by willfully understating customers'

liabilities, overstating their refunds and credits, and acting with a reckless and intentional disregard of rules and regulations.

48.    Ms. Hollis has also engaged in conduct subject to penalty under 26 U.S.C. § 6695(g) by repeatedly failing to exercise due diligence in determining the eligibility of her customers to claim the EITC and AOTC.

49.    Ms. Hollis's conduct substantially interferes with the administration of the internal revenue laws. Injunctive relief is necessary to prevent this misconduct because, absent an injunction, Ms. Hollis is likely to continue preparing false federal income tax returns.

50.    A narrower injunction would be insufficient to prevent Ms. Hollis's interference with the administration of the internal revenue laws. Ms. Hollis prepares returns understating her customers' liabilities and overstating their refunds and credits through multiple schemes that report false information on her customers' tax returns. In addition, the IRS may not yet have identified all of the schemes used by Ms. Hollis to understate liabilities and overstate refunds and credits. Failure to permanently enjoin Ms. Hollis will require the IRS to spend additional resources to uncover all the future schemes. The harm resulting from these schemes includes both the expenditure of these resources and the revenue loss caused by the improper deductions and credits Ms. Hollis claimed on returns she prepared. Accordingly, only a permanent injunction is sufficient to prevent future harm.

Tanja D. Hollis, TTP, LLC, Tanja Tax Preparations sole proprietorship, and any entity through which Ms. Hollis conducts business should be permanently enjoined from acting as a tax return preparer.

### COUNT II: INJUNCTION UNDER 26 U.S.C. § 7408 FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. § 6701

51.    The United States incorporates by reference the allegations contained in paragraphs 1 through 50.

52.    Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701, which penalizes a person who aids or assists in the preparation of tax returns that the person knows will result in an understatement of tax liability.

53.    Ms. Hollis has engaged in conduct subject to penalty under 26 U.S.C. § 6701 by preparing income tax returns that claim credits and deductions that she knew to be improper, false, and/or inflated.

54.    Ms. Hollis's repeated actions fall within 26 U.S.C. § 7408, and injunctive relief is appropriate to prevent reoccurrence of this conduct.

55.    If Ms. Hollis continues to act as a tax return preparer, her conduct will result in irreparable harm to the United States, and the United States has no adequate remedy at law.

56.    Ms. Hollis's conduct has caused, and will continue to cause, substantial tax losses to the United States Treasury, much of which may be undiscovered and unrecoverable. The IRS will have to devote substantial and unrecoverable time and resources to auditing their customers individually to detect understated liabilities and overstated refund claims unless the Court enjoins her activities.

57.    The detection and audit of erroneous tax credits and deductions claimed on returns prepared by Ms. Hollis would be a significant burden on IRS resources.

## COUNT III: INJUNCTION UNDER 26 U.S.C. § 7402 FOR UNLAWFUL INTERFERENCE WITH THE ENFORCEMENT OF INTERNAL REVENUE LAWS

58.    The United States incorporates by reference the allegations contained in paragraphs 1 through 57.

59.    Section 7402(a) of the Internal Revenue Code authorizes a court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

60.    Ms. Hollis has repeatedly and continually engaged in conduct that interferes substantially with the administration and enforcement of the internal revenue laws.

61.    If Ms. Hollis continues to act as a federal tax return preparer, her conduct will result in irreparable harm to the United States, and the United States has no adequate remedy at law.

62.    Ms. Hollis's conduct has caused and will continue to cause tax losses to the United States Treasury, much of which may be undiscovered and unrecoverable. Moreover, unless Ms. Hollis is enjoined from preparing returns, the IRS will have to devote substantial and unrecoverable time and resources auditing her customers individually to detect understated liabilities and overstated refund and credit claims.

63.    The detection and audit of erroneous tax credits and deductions claimed on returns prepared by Ms. Hollis would be a significant burden on IRS resources.

## COUNT IV: DISGORGEMENT OF ILL-GOTTEN GAINS UNDER 26 U.S.C. § 7402(a)

64.    The United States incorporates by reference the allegations contained in paragraphs 1 through 63.

65.    Section 7402(a) of the Internal Revenue Code authorizes a court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

66.    Ms. Hollis's conduct substantially interferes with the enforcement of the internal revenue laws. Specifically, Ms. Hollis caused and

continues to cause the United States to issue tax refunds to individuals not entitled to receive them. Without Ms. Hollis's conduct, the United States would not have issued these fraudulent refunds.

67.    Ms. Hollis unjustly profits from her misconduct at the expense of the United States. She frequently subtracts her fees from her customers' improper refunds.

68.    Ms. Hollis is not entitled to these ill-gotten gains. Using its broad authority under section 7402(a), the Court should enter an order requiring Ms. Hollis and TTP, LLC to disgorge to the United States the unlawful profits (in the form of fees subtracted from customers' tax refunds) Ms. Hollis obtained for the preparation of federal tax returns that make grossly incompetent, negligent, reckless, and/or fraudulent claims.

## RELIEF REQUESTED

WHEREFORE, the United States respectfully requests that the Court:

A.    Find that Tanja D. Hollis, through Tanja Tax Preparations, LLC and Tanja Tax Preparations sole proprietorship, has repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695 and that injunctive relief is appropriate under 26 U.S.C. § 7407 to prevent recurrence of that conduct;

B.    Find that Ms. Hollis has repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6700 and 6701 and that

injunction relief is appropriate under 26 U.S.C. § 7408 to prevent recurrence of that conduct;

C.    Find that Ms. Hollis repeatedly and continually engaged in conduct that substantially interferes with the proper enforcement and administration of the internal revenue laws and that injunctive relief is appropriate under 26 U.S.C. § 7402(a) to prevent recurrence of that conduct;

D.    Permanently enjoin Tanja D. Hollis and any other person working in concert or participation with her from directly or indirectly:

      i.    Preparing, assisting in the preparation of, or directing the preparation of federal tax returns, amended returns, or other tax-related documents and forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than herself;

     ii.    Filing, assisting in the filing of, or directing the filing of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than herself;

   iii.    Using, maintaining, renewing, obtaining, transferring, selling, or assigning any PTIN or EFIN, including those assigned to others and misused by Tanja D. Hollis, Tanja

26

Tax Preparations, LLC, Tanja Tax Preparation sole

proprietorship, and any entity through which Tanja D.

Hollis conducts business;

iv.    Owning, operating, managing, profiting from, working in,

investing in, providing capital or loans to, receiving fees or

remuneration from, controlling, licensing, consulting with,

franchising, or volunteering at a business that prepares or

assists in the preparation of tax returns, amended returns,

or other tax-related documents or forms, including any

electronically submitted tax returns or tax-related

documents;

v.    Transferring, selling, or assigning her customer lists and/or

other customer information;

vi.    Training, instructing, teaching, creating, or providing

guides, memoranda, directions, instructions, or manuals

pertaining to the preparation of federal tax returns;

vii.    Engaging in activity subject to penalty under 26 U.S.C.

§§ 6694, 6695, and/or 6701; and

viii.    Engaging in conduct that substantially interferes with the

proper administration and enforcement of tax laws;

E.    Require Tanja D. Hollis, by injunction and order, at her own expense and within the times specified below, to:

i.    Send by certified mail, return receipt requested, to each person for whom Tanja D. Hollis prepared federal tax returns or any other federal tax forms after January 1, 2022, within 30 days of entry of the final injunction in this action: (a) a copy of the final injunction entered against Tanja D. Hollis, Tanja Tax Preparations, LLC, and any entity through which Tanja D. Hollis conducts business in this action; (b) a copy of the Complaint setting forth the allegations as to how Tanja D. Hollis fraudulently prepared federal tax returns; and (c) a letter prepared by the United States explaining the injunction;

ii.    Turn over to the United States copies of all returns and claims for refund that Tanja D. Hollis prepared after January 1, 2022, within 30 days of entry of the final injunction in this action;

iii.    Provide the United States a list of the names, Social Security numbers, addresses, phone numbers, and email addresses of each person for whom Tanja D. Hollis prepared tax returns, other tax forms, or claims for refund

after January 1, 2022, within 30 days of entry of the final

injunction in this action, regardless of the PTIN or EFIN

used;

iv.     Prominently post, within 10 days of entry of the final

injunction in this action, in Tanja D. Hollis's place of

business where she prepared tax returns and any other

locations: a statement, to be approved by the United States,

that she has been enjoined from the preparation of tax

returns;

v.     Prominently post, within 10 days of entry of the final

injunction int this action, on all social media accounts and

websites that Tanja D. Hollis used to advertise her tax

preparation services: a statement, to be approved by the

United States, that she has been enjoined from the

preparation of tax returns, a copy of the injunction, and a

hyperlink to any press release regarding the injunction

that the Department of Justice may issue. Tanja D. Hollis

shall be required to maintain the post required by this

paragraph for a period of one year, after which she will

close the accounts;

vi.     Deliver a copy of the injunction to any employees, contractors, any other individuals preparing tax returns on behalf of Tanja D. Hollis, and all vendors of Tanja D. Hollis, including tax preparation software companies, within 30 days of entry of the final injunction in this action;

vii.    File a sworn statement with the Court evidencing Tanja D. Hollis's compliance with the foregoing directives within 45 days of entry of the final injunction in this action; and

viii.   Keep records of Tanja D. Hollis's compliance with the foregoing directives, which may be produced to the Court, if requested, or the United States pursuant to paragraph F, below;

F.   Order, without further proceedings:

i.      The immediate revocation of any and all PTINs and EFINs held by, assigned to, or within the control of Tanja D. Hollis, Tanja Tax Preparations, LLC, Tanja Tax Preparations sole proprietorship, and any entity through which Tanja D. Hollis conducts business issued pursuant to 26 U.S.C. § 6109;

ii.     That Tanja D. Hollis, Tanja Tax Preparations, LLC, Tanja Tax Preparations sole proprietorship, and any entity

through which Tanja D. Hollis conducts business cease using and not use in the future any other PTINs or EFINs;

iii.     The immediate revocation of any EFIN held by, assigned to, or within the control of Tanja D. Hollis, Tanja Tax Preparations, LLC, Tanja Tax Preparations sole proprietorship, and any entity through which Tanja D. Hollis conducts business; and

iv.     That Tanja D. Hollis, Tanja Tax Preparations, LLC, Tanja Tax Preparations sole proprietorship, and any entity through which Tanja D. Hollis conducts business cease using and not use in the future any other EFINs or EINs;

G.     Require, pursuant to 26 U.S.C. § 7402(a), Tanja D. Hollis to disgorge to the United States the unlawful profits (the amount of which is to be determined by the Court) that she obtained through fees for the preparation of federal tax returns that make grossly incompetent, negligent, reckless, and/or fraudulent claims.

H.     Allow, by order, the United States to monitor Tanja D. Hollis's compliance with the injunction through formal and informal discovery, including but not limited to requests for the production of documents, interrogatories, and depositions in accordance with the Federal Rules of Civil Procedure;

I.     That the Court enter an order informing Tanja D. Hollis that her failure to comply with the injunction may result in sanctions of civil and/or criminal contempt, including but not limited to:

   i.     Disgorgement of fees for returns prepared in violation of the injunction;

   ii.    Reimbursement to the United States of all costs associated with enforcing the injunction;

   iii.   Seizure of items with which returns are being prepared, including computers;

   iv.    Daily fines during non-compliance;

   v.     Barring access to the location(s) at which returns are being prepared in violation of the injunction, including permitting the United States to change the locks at any location at which returns are prepared in violation of the injunction to prevent employees and customers from entering the location; and

   vi.    Appointment of a receiver to take possession of any business at which Ms. Hollis prepares returns in violation of this injunction and the assets of said business and to sell the business and its assets to pay any civil compensatory sanctions imposed on Ms. Hollis.

J.     Retain jurisdiction over Tanja D. Hollis and this action to enforce any permanent injunction entered; and

K.     Award the United States its costs incurred in connection with this action, along with such other relief as justice requires.

Dated: June 13, 2025                    Respectfully submitted,

*/s/ Matthew L. Paeffgen*
MATTHEW L. PAEFFGEN
District of Columbia Bar No. 90002655
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
Phone: 202-307-6490
Fax: 202-514-4963
Email: Matthew.Paeffgen@usdoj.gov

*Of Counsel:*

THEODORE S. HERTZBERG
United States Attorney
Northern District of Georgia